IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

BRYAN KNIGHT                                                                          PLAINTIFF

               v.                              Civil No.  15-3105

SHERIFF MIKE MOORE; JAIL
ADMINISTRATOR JASON DAY;
and TURNKEY CORRECTIONS                                                   DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights case filed by the Plaintiff, Bryan Knight, pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis.*

Plaintiff is currently incarcerated in the Grimes Unit of the Arkansas Department of Correction (ADC).  This case stems from his incarceration in the Boone County Detention Center (BCDC).  Plaintiff maintains he was denied access to a law library while incarcerated at the BCDC.

A motion for summary judgment (Doc. 45) was filed on behalf of the Boone County Defendants, Sheriff Mike Moore and Jail Administrator Jason Day.  A motion for summary judgment (Doc. 41) was also filed on behalf of Turnkey Corrections (Turnkey).  Turnkey has also filed a motion to dismiss (Doc. 53).

On October 13, 2016, a hearing was held on the summary judgment motions to allow the Plaintiff to respond orally to the motions.  In addition to offering his testimony, Plaintiff submitted exhibits (Doc. 55).  The motions are now ready for decision.

### 1.  Background

On February 5, 2015, Boone County entered into a contract with Turnkey to provide inmate kiosks to the BCDC. *Boone County Defendants' Exhibits* (hereinafter *Cty. Ex.*) 1-2; *Turnkey Exhibits* (hereinafter *TK Ex.*) A at ¶ 3.  The services offered by Turnkey include: (1) the ability to order

commissary items; (2) inmate e-mail; (3) on-site and off-site video visitation; and, (4) access to various legal web sites through the Internet. *TK Ex*. A at ¶ 4.

With respect to legal web sites, Boone County selected links to the following free legal services on the Internet: www.justia.com, law.justia.com, law.justia.com/lawsearch, and law.justia.com/codes/arkansas. *Cty. Ex*.1 at ¶ 5 & *TK Ex*. A at ¶ 5. If the kiosks were not functioning properly, Turnkey was notified and it's policy was to fix the kiosk within forty-eight hours. *TK Ex*. A at ¶ 7. By affidavit, Robert Allen, the President of Turnkey, states that: "neither I nor any other Turnkey representative under my direction has received any indication or seen any evidence that any of the inmate kiosks located at the Jail were inoperable or failed to function as intended for forty-eight hours or longer. This includes the kiosks being able to access the Justia websites selected by the Jail." *TK Ex*. A at ¶ 7.

Plaintiff was booked into the BCDC on May 8, 2015. *Cty. Exs*. 1 at ¶ 4 & 1-1. He remained incarcerated there until transferred to the ADC on October 8, 2015. *Id*. at ¶ 14 & 1-4.

On August 12, 2015, Plaintiff submitted a grievance stating that the keyboard feature was not accessible to refine his searches on the kiosk. *Cty. Exs*. 1 at ¶ 6 & 1-3 at 18. Administrator Day (Day) responded the following day indicating that he would notify Turnkey. *Id*.

On August 20, 2015, Plaintiff submitted a grievance complaining he was not given full access to the law library. *Cty. Exs*. 1 at ¶ 7 & 1-3 at 13. He indicated he could not get legal forms under the legal forms menu. *Id*. The grievance was forwarded to Day on August 22, 2015. *Id*. & 1-3 at 12. On August 24, 2015, Day responded that they were getting the kiosk fixed as soon as possible. *Id*. & 1-3 at 11.

On August 20, 2015, Plaintiff filed a civil rights case, *Knight v. Day, et al*., Civil No. 15-3071. On August 27, 2015, Plaintiff submitted a grievance stating he was not being allowed access

to legal forms on the kiosks.  *Cty. Ex.* 1 at ¶ 8; 1-3 at 8.  Day responded on August 28 that Turnkey was working on getting it installed properly and that "[t]hey were aware of the problem."  *Id.* & 1-3 at 7.

On September 1, 2015, the Plaintiff complained the search bar and the forms menu did not work on the kiosk.  *Cty. Ex.* 1 at ¶ 9; 1-3 at 7.  Penny Goodman responded on September 6 saying a ticket had been sent to Turnkey and that Turnkey was attempting to fix this.  *Id.*  She also said that Turnkey indicated Plaintiff had access by using the search bar.  *Id.* 1-3 at 7.

On September 9, 2015, and September 19, 2015, Plaintiff requested copies of legal materials.  *Cty. Ex.* 1 at ¶ 10; 1-3 at 7.  On September 24, 2015, and September 25, 2015, Plaintiff submitted grievances stating he did not have adequate access to the law library.  *Id.* at ¶ 25; 1-3 at 6.  He said he needed access to legal forms so he could file them with the courts.  *Id.*  He indicated he had active cases in both state and federal court.  *Id.*  On September 25, Day advised the Plaintiff that the law library was working.  *Id.*  Day also asked Plaintiff what he needed access to.  *Cty. Ex.* 1-3 at 6.  Plaintiff responded to "any and all legal forms" such as subpoena forms or affidavit forms.  *Id.* at 5.

On September 27, 2015, Michael Alsobrook also asked Plaintiff what forms he was needing.  *Cty. Ex.* 1-3 at 5.  Plaintiff responded "a 1983 form, a writ of habeas corpus for both state and federal courts, by a state inmate, also a blank subpoena deuces tecum, a blank affidavit of complaint, penalty of perjury statement, blank affidavit for warrant of arrest."  *Id.*

On September 29, 2015, Plaintiff again complained that he did not have access to legal forms.  *Cty. Ex.* 1 at ¶ 12 & 1-3 at 4.  On September 29, Day responded stating the Plaintiff had been given a 1983 form and two habeas forms.  *Id.* at 1-3 at 4.  Plaintiff was told he would have to get the "rest" from his attorney.  *Id.*  Plaintiff replied that he was acting as his own attorney.  *Id.*  When he used the law library on the kiosk, Plaintiff stated that he was restricted as he had informed them several times.

*Id.*  Plaintiff said he had no one to get the documents for him.  *Id.*  Further, Plaintiff stated he needed to read some cases.  *Id.*

On September 30, 2015, Plaintiff stated he was working on some legal issues and the law library still was not working correctly.  *Cty. Ex.* 1-3 at 3.  For example, Plaintiff said that when he put a "subject matter" in the search bar and hit enter a list of cases came up but when he attempted to read the cases "nothing comes up" that is listed as a result of his search.  *Id.*

On October 2, 2015, Plaintiff filed a grievance directed to Sheriff Moore.  *Cty. Ex.* 1-3 at 3.  Plaintiff said he had showed two officers the problems and also contacted Day in an effort to get access to the cases of both the state and federal courts.  *Id.*  For example, when he searched *Roe v. Wade*, Plaintiff stated the case came up but he was unable to select it.  *Id.*  Day responded on October 6, 2015, and stated he would help the Plaintiff locate a specific case or documentation.  *Cty Ex.* 1 at ¶ 12 & 1-3 at 1.  Plaintiff filed this lawsuit on October 22, 2015.

### 2.  Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."  *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient

evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

**3. Discussion**

"Inmates undeniably enjoy a constitutional right of access to the courts and the legal system." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996) (*citing, Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). In *Myers,* the Eighth Circuit stated that:

> [t]o protect that right, prisons must provide inmates with some access to legal materials or to legal assistance so that inmates can prepare and pursue complaints, and with some ability to mail these complaints and related legal correspondence once prepared. Inmates do not have a right, however, either to law libraries or to unlimited stamp allowances for legal mail. Instead, the duty to make such arrangements is bounded by the inmates' right of meaningful access to the courts. To state a claim that a law library or legal assistance program violates this right, inmates must assert that they suffered an actual injury to pending or contemplated legal claims. Alleging theoretical inadequacies is insufficient. Inmates must instead show, for example, that a complaint that they prepared was dismissed due to a technical requirement that a library's inadequacies prevented them from knowing, or that a library was so inadequate that it prevented them from filing a complaint for actionable harm at all.

*Myers*, 101 F.3d at 544 (citations omitted).

In *Cody v. Weber*, 256 F. 3d 764 (8th Cir. 2001), the Eighth Circuit noted that the Supreme Court in *Lewis v. Casey*, 518 U.S. 343 (1996) and *Bounds v. Smith*, 430 U.S. 817 (1977), "determined that the right of access to the courts guarantees an inmate the ability to file lawsuits that directly or collaterally attack the inmate's sentence or that challenge the conditions of the inmate's confinement, but it does not extend to the right to 'discover grievances' or to 'litigate effectively once in court.'" *Cody*, 256 F. 3d at 767-68 (*quoting Lewis*, 518 U.S. at 354-55).

In this case, Plaintiff's claim fails because he has suffered no actual injury. Although he

states he only had restricted access to the law library or legal materials and could not access legal forms or case law, Plaintiff missed no deadlines for filing any documents with any court.  *See Klinger v. Department of Corrections*, 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic).  Although "[p]ro se [plaintiffs] have a right of access to adequate law libraries or adequate assistance from persons trained in the law," *United States v. Knox*, 950 F.2d 516, 519 (8th Cir. 1991) (quotations omitted), the right is not an abstract one and the inmate must "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim."  *Lewis*, 518 U.S. at 351.  Plaintiff has made no such showing, and his claim fails as a matter of law.

### 4.  Conclusion

For the reasons stated, I recommend that the motions for summary judgment (Docs. 41 & 45) be **GRANTED and this action be DISMISSED WITH PREJUDICE.**  I further recommend that Turnkey's motion to dismiss (Doc. 53) be **DENIED AS MOOT**.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 12th day of January, 2017.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE